# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
November 27, 2012 Session

## STATE OF TENNESSEE v. KEVIN GLENN TIPTON

**Appeal from the Criminal Court for Knox County**
**No. 91564     Jon Kerry Blackwood, Judge**

**No. E2012-00038-CCA-R3-CD - Filed April 13, 2013**

Pursuant to a plea agreement, the Defendant-Appellant Kevin Glenn Tipton agreed to enter a guilty plea to one count of felony driving under the influence of an intoxicant (DUI) in exchange for a sentence of one year, which was suspended after service of the mandatory minimum sentence of 150 days in confinement. At the plea submission hearing, the trial court accepted Tipton's guilty plea and imposed the agreed upon sentence but reserved judgment until October 6, 2010. On October 5, 2010, Tipton's newly retained counsel filed a notice of appearance. On October 22, 2010, Tipton, through his newly retained counsel, filed a motion to withdraw his guilty plea, alleging that trial counsel provided ineffective assistance. Following a hearing, the trial court denied the motion. On appeal, Tipton argues that the trial court erred by (1) applying the "manifest injustice" standard under Tennessee Rule of Criminal Procedure 32(f)(2), and (2) denying his motion to withdraw his guilty plea. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

James A. H. Bell and Randall E. Reagan (on appeal), and James A.H. Bell and Edward Holt, Jr. (at trial), Knoxville, Tennessee, for the Defendant-Appellant, Kevin Glenn Tipton.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Randall E. Nichols, District Attorney General; and Kyle Hixson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On April 29, 2009, the Knox County Grand Jury indicted Tipton for DUI per se, DUI, felony DUI per se, and felony DUI. At the September 8, 2010 plea submission hearing, Tipton waived his trial by jury and requested the court's acceptance of his guilty plea to one count of felony DUI per se in exchange for the agreed upon sentence of one year, which was suspended after service of the mandatory minimum sentence of 150 days in confinement. Trial counsel then asked "that the Court reserve judgment until October 6th, and [Tipton will] be here and go into custody at that time." After hearing no objection from the State, the trial court agreed to reserve judgment until October 6, 2010. The court then conducted the plea colloquy with Tipton, and three other defendants, as a group guilty plea.

The State then summarized the facts supporting Tipton's guilty plea:

> Your Honor, if called to trial in this case, the State would call the witnesses listed in the indictment including Brandon Shelley with the Knoxville Police Department. He would testify he was on patrol on June 5th, 2008[,] about 1:26 in the morning, and he observed a vehicle driven by [Tipton] on Kingston Pike near Downtown West crossing the lane lines, weaving within the lane lines.
>
> [He p]ulled [Tipton] over. [Tipton] had glassy eyes. Got him out of his car. [Tipton] was unsteady on his feet and had a smell of an alcoholic beverage about his person.
>
> The–Mr. Tipton performed poorly on three standard field sobriety tests, and he did consent to give blood.
>
> Officer Shelley took Mr. Tipton to the hospital to have []his blood drawn. The Tennessee Bureau of Investigation tested []his blood, and one of their agents would testify that Mr. Tipton's blood/alcohol concentration was .26 [percent].
>
> And Officer Shelley would further testify that it was his opinion that Mr. Tipton was intoxicated on that evening, and all of that did happen in Knox County.
>
> The State would also enter a certified driving history of Mr. Tipton from the Tennessee Department of Safety, and it would show DUI convictions including but not limited to conviction dates of: April 25th, 2003[,] here in Knox County General Sessions Court; October 12th, 2000, Knox County

General Sessions Court; and October 2nd, 2000[,] in Knox County General Sessions Court.

The trial court accepted Tipton's plea of guilty. The court then found Tipton guilty of felony DUI per se and imposed his sentence:

> In case 91564 based on your plea of guilt and stipulated proof, I'm going to find you guilty of felony driving under the influence, impose a one year sentence, a three thousand dollar ($3,000) fine and costs, suspend all but 150 days with the balance to be served on State Probation. You will lose your license for five years.
>
> I'm going to, at your request, reserve judgment until October 6th this year, at which time judgment will enter. And the plea agreement will be incorporated as being freely, voluntarily[,] and knowingly given.
>
> I expect to see you back October 6th at 9 a.m. in this courtroom, and make sure you pick up no additional offenses.

On September 8, 2010, the trial court entered a minute entry showing that Tipton had entered his guilty plea to felony DUI per se and setting "the punishment at 1 year in the State Penitentiary, the Court having found the defendant is a Standard Offender whose punishment falls within Range I as defined by statute and a fine of $3,000.00. This is a Class E felony. Judgment is hereby reserved until October 6, 2010" The same day, the trial court also entered an order waiving Tipton's right to a trial by jury and accepting his guilty plea.

On October 5, 2010, Tipton's newly retained counsel filed a notice of appearance. On October 22, 2010, Tipton, through newly retained counsel, filed a motion to withdraw his guilty plea and a memorandum in support of the motion, alleging that the ineffective assistance of trial counsel warranted the withdrawal of his guilty plea. On November 3, 2010, the trial court filed an order substituting new counsel for trial counsel. On July 26, 2011, the Honorable Jon Kerry Blackwood, Senior Judge, was designated to hear Tipton's motion to withdraw his guilty plea. On August 26, 2011, the State filed a response opposing the motion.

**Hearing on Motion to Withdraw Guilty Plea.** At the November 22, 2011 evidentiary hearing on the motion to withdraw the guilty plea, Tipton testified that he hired trial counsel to represent him on his charges a week or two after his arrest. He said that trial counsel represented him on this case in general sessions court and in criminal court.

Tipton said that he met with trial counsel at trial counsel's office for approximately thirty minutes. He said that this was the longest meeting he had with trial counsel during the representation. During this meeting, trial counsel talked to him about the facts of the case for approximately ten to fifteen minutes. Tipton did not recall trial counsel asking him questions about what the police officers did or whether he had been drinking. Tipton said he asked that trial counsel try to resolve the case so that he could get "a work release so [he] could continue to work" and support his family. He understood a work release to mean that he "would still be incarcerated but [he] could leave during the day to continue to work." Trial counsel told Tipton he would "see what he could do."

Tipton said that after their first meeting, trial counsel asked him to pick up a copy of the video recording of his traffic stop and bring it to his office, which he did. However, Tipton said that trial counsel never reviewed the videotape of the stop with him. He then saw trial counsel during his six court appearances in general sessions court, where they "would meet inside the courtroom normally and then . . . would go outside and just kind of talk for a minute" before going back inside the courtroom. Tipton said that they usually discussed the possibility of a work release sentence. He said that trial counsel never mentioned the point at which he might be eligible for work release. Tipton said he also talked to trial counsel on the telephone for the purpose of confirming the court dates, although he did not recall discussing the facts of his case during these telephone conversations.

Tipton said that he and trial counsel discussed the possibility of a sentence of 120 days in confinement. He said he was willing to serve an additional thirty days in order to get a work release, which was his "biggest concern." Tipton said that trial counsel never informed him that he would be unable to obtain a work release sentence because of his charge.

Tipton stated that he and trial counsel discussed getting his case bound over to the grand jury. He did not remember whether trial counsel talked to him about waiving his preliminary hearing.

Tipton asserted that after his case was transferred to criminal court, trial counsel never talked to him about the facts of his case. During the five hearings in criminal court, trial counsel told him that the prosecutor did not want to allow him to obtain a work release sentence. He said that no one ever informed him that he could not receive a work release sentence in criminal court and that he continued to believe that a sentence involving work release was a possibility until his final court date. Prior to pleading guilty, Tipton said that trial counsel informed him that the prosecutors were "ready to be done" with his case and that they "were not going to allow [him] to work[.]" Trial counsel then told him that the prosecutors had offered for him to plead guilty to felony DUI in exchange for 150 days in jail

and no work release. Tipton said he entered his guilty plea to felony DUI per se in September 2010. Tipton recalled the details surrounding the plea agreement:

> I remember having [the plea document] in front of me. Basically what I–we went outside, I was just tore up of course, and just called my wife and let her know what was going on. Now, if he sat down and–I don't think he sat down and read them to me word for word. He handed them to me[,]and I kind of looked through them[,] and he explained to me what my charges were and made sure I understood that.

Tipton remembered the trial court asking him questions about whether he understood the meaning and consequences of his guilty plea. He said he thought he understood what he was doing at the time. He admitted telling the trial court that he was satisfied with trial counsel's representation at the time of his guilty plea. However, Tipton said that trial counsel never discussed any defenses to his charges with him.

Tipton stated that he did not remember trial counsel talking to him about case law relevant to his case or about what the State would have to prove in order to find him guilty. He said he was not aware of trial counsel interviewing the police about his case. Tipton said trial counsel never talked to him about filing any motions or about the facts surrounding his prior DUI convictions. He did not recall trial counsel talking to him about suppressing the evidence of his traffic stop.

Tipton asserted that if he had known that there were defenses that could have been raised in his case, he would have wanted trial counsel to raise them and would not have entered his guilty plea. In addition, he said that if trial counsel had told him that some of the evidence against him could have been suppressed, he would have wanted trial counsel to attempt to have it suppressed and would not have entered his guilty plea.

On cross-examination, Tipton admitted that trial counsel told him his blood alcohol content was .26 percent the night of his arrest. He also admitted that trial counsel never promised him he could obtain a sentence involving work release. Tipton acknowledged that trial counsel talked to him about his potential sentence in general sessions court and criminal court. He admitted that, pursuant to his plea agreement, he received the minimum sentence for his charge of felony DUI.

Trial counsel testified that he had been practicing law for thirty years and his area of concentration was criminal defense. He stated that he talked to the State about reducing Tipton's charges to DUI, second offense, so that Tipton could receive a work release sentence. He also said he talked to Tipton about his criminal history. Trial counsel admitted

that he filed no pleadings in Tipton's case. However, he said he investigated Tipton's case and obtained the DUI report and blood alcohol content test results. He also said he met with Tipton in his office at least one time.

Trial counsel stated that he first received the videotape of Tipton's stop while the case was in general sessions court and that he reviewed the videotape several times. However, he said he never reviewed the videotape with Tipton. He said the recording showed that the officer stopped Tipton based on his "weaving and failure to maintain the lane." Because of the content of the videotape, trial counsel said he discussed the legality of Tipton's stop with the prosecutor several times:

> [W]hen I would talk to the General, you know, I would say, you know, we could have a hearing, a suppression hearing on the stop and, you know, we could ask the judge to make a decision on it[,] and we might–we may or may not win.

He said that the prosecutor was of the opinion that "he had a good stop." Trial counsel also said he never filed a suppression motion because Tipton "chose not to do that" after he "discussed that very issue with him." He said he talked to Tipton about the suppression issue "[b]oth in Sessions Court and when we were in Criminal Court on more than one occasion." He added:

> [I] explained to [Tipton] in detail what [attempting to suppress the stop] involved and that we could do that. He had a right to have that done[,] and [I] explained to him what might happen and what might not happen and what the results might be if we won and what they might be if we lost.

However, he admitted that he did not memorialize this conversation with Tipton in his file. Trial counsel stated that his investigation included gathering the results from the blood test, the DUI report, and the copy of the indictment and reviewing this information with Tipton. He also stated that he talked to Tipton about challenging his stop in a preliminary hearing or in a suppression motion. Trial counsel said he never hired an investigator in Tipton's case and never filed a motion for discovery. He could not recall whether he had a discussion with the arresting officer in Tipton's case, although he said that he normally talked to the arresting officer once a hearing date was set. Trial counsel stated that he and Tipton talked "about how to proceed with his case, whether or not [Tipton] wished to have a suppression hearing[,] and . . . what offers or discussions there were between" trial counsel and the prosecutor.

Trial counsel said that Tipton was charged with DUI, third offense, in general sessions court. However, once Tipton was indicted, his four prior DUI's were placed on the indictment. Trial counsel could not recall what offer he had received from the prosecutor while the case was in general sessions court. However, he did not remember receiving an offer for DUI, second offense, with a sentence of work release in general sessions court. Trial counsel said he talked to the prosecutor in general sessions court about Tipton's criminal history and wrote that information in his file. He said he did not check to see if Tipton's prior convictions were valid at the general sessions court level but thought he checked the validity of the convictions when the case was transferred to criminal court. Trial counsel admitted that he did not prepare Tipton's case for trial. He also admitted that he did not ask about the routing sheets or the chain of custody for the report on Tipton's blood alcohol content and did not check the packaging on Tipton's blood sample.

On cross-examination, trial counsel said he explained to Tipton that he had a right to a preliminary hearing in general sessions court and that if he successfully challenged his stop in that court, that his case would be dismissed. Trial counsel reiterated what he told Tipton regarding his stop:

> Well, the way I would have explained it to him was, you know, if we raised the issue of the bad stop at a preliminary hearing and the judge agreed with our position, the judge would dismiss the case at that time, but I also explained to him [was] that because of his record that wouldn't be the end of it, that the prosecutors would take the case to the grand jury and have him charged again because of his record and that he would be subject to arrest and have to make a new bond and wind up in Criminal Court that way. The other way I explained to him if we had a preliminary hearing and the judge disagreed with our motion to suppress based on the stop, then–and the Court found . . . there to be probable cause that he committed a crime, they would send it to the Knox County grand jury for further review. I explained all that to him.

Trial counsel said he was aware that Tipton had four prior DUI convictions at the time his case was bound over to the grand jury. He acknowledged that he had received an offer involving jail time in general sessions court but that Tipton had "other issues . . . about custody" and "want[ed] to buy some more time or put [his case] off[.]" Trial counsel stated that it was Tipton's decision not to accept the offer in general sessions court. He also stated that it was a common practice of defense attorneys to bind a case over to the grand jury to delay the case's resolution or to attempt to obtain a better offer than the one received in general sessions court. Trial counsel said he told Tipton that once they were in criminal court he "would have an opportunity to litigate the issue of the stop once more, that [the] issue

would still be there, and if he chose to go in that direction later, that he would have that option at that time."

Trial counsel stated that once the case was moved to criminal court, he discussed the suppression issue with Tipton "on more than one occasion." He said he talked to several prosecutors about Tipton's case and always informed Tipton of the substance of those conversations. He explained to Tipton the minimum and maximum sentences that he faced with a charge of felony DUI and informed Tipton that he was entering a guilty plea in exchange for the minimum punishment for the charged offense. Trial counsel stated that Tipton freely, knowingly, and voluntarily entered his guilty plea and that Tipton "was ready to do it and get it over with."

Tipton was recalled by his attorney and testified that he did not remember trial counsel having repeated discussions with him regarding the possibility of challenging the validity of his stop. Tipton also said that trial counsel never had an "in depth" discussion with him about the videotape of his traffic stop. Instead, he said they only talked about the videotape of his stop one time, and trial counsel told him only that the recording of his stop "didn't look good." Moreover, Tipton said that he and trial counsel never had lengthy discussions regarding his case during his court appearances. On cross-examination, Tipton admitted that he could not remember whether trial counsel discussed suppressing his traffic stop with him.

The State called Brandon Shelley, an officer with the Knoxville Police Department, to testify. When Tipton's counsel objected that the State was attempting to litigate the suppression issue through the officer's testimony, the trial court allowed the State to present Officer Shelley's testimony as an offer of proof. During this offer of proof, Officer Shelley testified that he encountered Tipton on June 5, 2008, while on patrol:

> I was going eastbound on Kingston Pike and [Tipton's] vehicle was going westbound. He had c[o]me out of that little curve right there. I think it's like–I don't think it's the Hardee's, but it's right there like where the U-Haul and that little curve is, and he came over that and it looked like he had veered off the side of the road a little bit. So at that point I turned around to follow his vehicle for a little bit and I observed him swerving probably about–I would [need to] refresh my memory because it happened three years ago by looking at the video, but it probably [was] about four times where he actually crossed out of the lane lines, not to mention I know that swerving within the lane is not illegal, but he actually did cross between the lane line and the fog line probably about four times. At that point[,] I initiated the traffic stop.

At the end of the hearing, the trial court took the matter under advisement. On December 19, 2011, the trial court filed an order entitled Findings and Conclusions, denying the motion to withdraw the guilty plea and ordering Tipton to report to the county jail within thirty days. In this order, the trial court held that Tipton was not entitled to withdraw his guilty plea because trial counsel did not provide ineffective assistance:

[Tipton] claims that [trial counsel] was ineffective in not filing a motion to suppress the stop and [in failing] to disclose to him that he had a defense based upon an invalid stop.

The Court has reviewed the videos of not only this stop, but [Guy Binette's] stop [in State v. Binette, 33 S.W.3d 215 (Tenn. 2000)] that involved a vehicle weaving within the driver's lane. There is certainly a question that could be raised regarding the stop in this case. The outcome of a motion to suppress might or might not have been successful. [Trial counsel] indicated that he discussed the search issues with [Tipton]. He further testified that he talked to the police officers involved with the stop. [Trial counsel] further indicated that he was aware of the law regarding these stops and indicated that he had discussions with the Assistant District Attorney General about the merits of the stop. The Assistant District Attorney felt that he had a "good stop" according to [trial counsel]. Consequently, the Assistant District Attorney was unwilling to make an offer that contained a provision for work release. The Court accredits this testimony of [trial counsel].

From the beginning, [Tipton] indicated that his only concern was the work release issue, not trial. While [c]ounsel are required to make adequate investigations and explore available defenses, the defendant is ultimately charged in this case. [Trial counsel] candidly admitted that he did not file a motion to dismiss or a motion to attack the blood alcohol results. He further stated that neither [Tipton] nor himself prepared for trial. [Tipton's] sole goal was to obtain work release. When that option was foreclosed, [Tipton] entered his guilty plea. Counsel's performance certainly would have been suspect had he failed to investigate and research the stop or failed to discuss the search issues with [Tipton]. However, the proof in this case indicates that counsel did investigate the stop and discussed the merits of a motion to suppress with [Tipton]. In addition, counsel met with [Tipton] on numerous occasions while the case was in General Sessions [Court]. Counsel investigated [Tipton's] prior DUI judgments . . . to determine their validity. On all occasions in which [Tipton] and [trial counsel] conferred, [Tipton's] only objective . . . was work release. Consequently, the Court finds [Tipton] was not denied effective

-9-

assistance of counsel. Therefore, [Tipton] has failed to show that manifest injustice requires that his plea of guilty be set aside[,] and this Motion is dismissed.

On January 9, 2012, the trial court entered Tipton's judgment of conviction. On the same date, Tipton filed a timely notice of appeal.

**ANALYSIS**

**I. Proper Standard.** First, Tipton argues that the trial court abused its discretion by applying the "manifest injustice" standard under Tennessee Rule of Criminal Procedure 32(f)(2) in denying his motion to withdraw his guilty plea. Specifically, he contends that the trial court should have applied the "any fair and just reason" standard under Rule 32(f)(1) because his sentence was not "imposed" until the judgment of conviction was entered, which was more than a year after he filed his motion to withdraw his guilty plea. While acknowledging that the trial court accepted the plea agreement at his September 8, 2010 plea submission hearing, he argues that the trial court specifically reserved entry of his judgment of conviction at that time. He also argues that there must be a judgment of conviction signed by the trial court and entered by the clerk before the "manifest injustice" standard can be applied.

In response, the State argues that the trial court correctly applied the "manifest injustice" standard in Tennessee Rule of Criminal Procedure 32(f)(2) because the motion was filed "post sentencing." It asserts that "there was no sentence for the trial court to set as the parties had agreed to the minimum sentence authorized for felony DUI, and the court at the plea hearing did expressly 'impose' the agreed-upon sentence." The State further asserts that the "manifest injustice" standard applies to this case, given the plain and ordinary language of the rule. We disagree. We conclude that the trial court erred when it failed to apply the "fair and just reason" standard in Rule 32(f)(1) and the accompanying non-exclusive multi-factor test in Phelps. See State v. Phelps, 329 S.W.3d 436, 446 (Tenn. 2010). However, after reviewing the record in light of the Phelps factors, we conclude that the trial court did not err in denying Tipton's motion to withdraw his guilty plea.

This court reviews a trial court's decision regarding a motion to withdraw a guilty plea for an abuse of discretion. Phelps, 329 S.W.3d at 443 (citing State v. Crowe, 168 S.W.3d 731, 740 (Tenn. 2005)). "An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion." Crowe, 168 S.W.3d at 740 (citing Goosby v. State, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995)). The Tennessee Supreme Court held that it will "also find an abuse of discretion when the trial court has failed to consider

-10-

the relevant factors provided by higher courts as guidance for determining an issue." <u>Phelps</u>, 329 S.W.3d at 443 (citing <u>State v. Lewis</u>, 235 S.W.3d 136, 141 (Tenn. 2007)).

Tennessee Rule of Criminal Procedure 32(f) provides:

Withdrawal of Guilty Plea.

(1) Before Sentence Imposed. – Before sentence is imposed, the court may grant a motion to withdraw a guilty plea <u>for any fair and just reason</u>.

(2) After Sentence But Before Judgment Final. – After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea <u>to correct manifest injustice</u>.

Tenn. R. Crim. P. 32(f) (emphases added). Rule 32(f) makes it clear that "a criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing." <u>Phelps</u>, 329 S.W.3d at 444 (citing <u>Crowe</u>, 168 S.W.3d at 740; <u>State v. Mellon</u>, 118 S.W.3d 340, 345 (Tenn. 2003)). However, "the trial judge should always exercise his discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial[.]" <u>Henning v. State</u>, 201 S.W.2d 669, 671 (Tenn. 1947). "The defendant bears the burden of establishing sufficient grounds for withdrawing his plea." <u>Phelps</u>, 329 S.W.3d at 444 (citing <u>State v. Turner</u>, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995)).

In <u>Phelps</u>, the Tennessee Supreme Court adopted the following list of factors used by the United States Court of Appeals for the Sixth Circuit in determining what constitutes "any fair and just reason" supporting the withdrawal of a guilty plea before sentencing:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

<u>Phelps</u>, 329 S.W.3d at 446 (quoting <u>U.S. v. Haygood</u>, 549 F.3d 1049, 1052 (6th Cir. 2008)); <u>see U.S. v. Spencer</u>, 836 F.2d 236, 239-40 (6th Cir. 1987). However, the court asserted that

"this list of factors is not exclusive; that no single factor is dispositive; and that the relevance of each factor varies according to the circumstances surrounding both the plea and the motion to withdraw." Id. at 446 (citing Haygood, 549 F.3d at 1052). In addition, it stated that "a trial court need not consider the seventh factor unless and until the defendant establishes a fair and just reason for permitting withdrawal." Id. at 446-47 (citing U.S. v. Ellis, 470 F.3d 275, 286 (6th Cir. 2006)); see Spencer, 836 F.2d at 240.

The Phelps court also held that a "change of heart" may warrant the withdrawal of a guilty plea when the balance of the factors weigh in the defendant's favor:

> Significantly, the Court of Appeals for the Sixth Circuit has emphasized that the purpose of the "any fair and just reason" standard "is to allow a hastily entered plea made with unsure heart and confused mind to be undone." United States v. Alexander, 948 F.2d 1002, 1004 (6th Cir.1991) (emphasis added). See also Ellis, 470 F.3d at 281 ("Withdrawal of a plea is appropriate where there is a real confusion or misunderstanding of the terms of the agreement."). We hold that, where a trial court applies the correct non-exclusive multi-factor analysis and determines that the balance of factors weighs in the defendant's favor, the trial court should allow the defendant to withdraw his plea, even if the defendant's reasons could be characterized as a "change of heart." We also caution trial courts, however, that a defendant should not be allowed to pervert this process into a tactical tool for purposes of delay or other improper purpose. See Alexander, 948 F.2d at 1004 (quoting United States v. Carr, 740 F.2d 339, 345 (5th Cir.1984)).

Id. at 448.

Here, Tipton sought to withdraw his guilty plea prior to entry of his judgment of conviction. In State v. Timothy Damon Carter, No. M2010-02248-CCA-R3-CD, 2012 WL 2308293, at *6 (Tenn. Crim. App. June 18, 2012), this court applied the "any fair and just reason" standard in Rule 32(f)(1) when the trial court accepted the defendant's guilty plea and plea agreement for an effective sentence of eight years and set the matter for a later sentencing hearing to determine the manner of sentencing and the defendant failed to appear at the aforementioned sentencing hearing, accrued new charges, and filed a motion to withdraw his guilty plea. In Timothy Damon Carter, just as in Tipton's case, the judgment of conviction was not entered prior to the filing of the motion to withdraw the guilty plea. See id. at *2. Because the "manifest injustice" standard in Rule 32(f)(2) references the trial court's ability to "set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice[,]" we conclude that the "manifest injustice" standard may not be applied in a scenario, like the one in this case, in which the trial court accepts the

-12-

defendant's guilty plea but reserves entry of the judgment of conviction until a later date and the judgment of conviction is not entered prior to the defendant filing a motion to withdraw his guilty plea. Accordingly, we conclude that the trial court erred in failing to apply the "any fair and just reason" in Rule 32(f)(1) regarding Tipton's motion to withdraw his guilty plea.

**II. Withdrawal of Guilty Plea.** Tipton also argues that, under either of the standards in Rule 32(f), "he has established that he should be allowed to withdraw his guilty plea because of the violation of his constitutional rights to effective assistance of counsel." He asserts that "because of the deficient performance and advice rendered by [trial counsel], his plea was not knowingly, voluntarily[,] and understandably made." He claims that trial counsel's performance was deficient because he failed to review the videotape of the traffic stop with him and failed to advise him that he should challenge the legality of the stop. He also argues that he was prejudiced by trial counsel's deficient performance because if trial counsel had challenged the legality of his stop, "he would have prevailed on that motion . . . or at the very least . . . there is a reasonable probability that he would have prevailed[,]" given that there was no reasonable suspicion to support the officer's stop in this case. See State v. Binette, 33 S.W.3d 215, 219 (Tenn. 2000) (holding that "[t]he number of times that a vehicle touches the center line or drifts within . . . a lane is not dispositive of the issue before this Court" and that "a court must consider the totality of the circumstances in determining whether reasonable suspicion was present at the time a stop was initiated"); State v. Smith, 21 S.W.3d 251, 257 (Tenn. Crim. App. 1999) (concluding that the arresting officer did not have reasonable suspicion to stop the defendant when the defendant changed lanes to pass another car without signaling); and U.S. v. Gross, 550 F.3d 578, 584 (6th Cir. 2008) (holding that the arresting officer did not have probable cause to believe that he witnessed a violation of Tennessee Code Annotated section 55-8-123 when the drivers of two different vehicles "straddled the center lane" for a few seconds).

In response, the State argues that Tipton cannot show that trial counsel's performance was deficient or that he was prejudiced by this allegedly deficient performance. First, the State argues that trial counsel testified that he discussed challenging the legality of the stop with Tipton and that it was Tipton's decision not to pursue this issue. The State notes that trial counsel's testimony on this point was specifically accredited by the trial court. The State also argues that it was reasonable for trial counsel not to pursue challenging the legality of the stop in light of the other evidence of Tipton's guilt. Second, the State argues that Tipton failed to establish prejudice because he "cannot show that, but for any alleged deficient performance, he would have rejected the State's plea offer and insisted on going to trial." The State argues that even if trial counsel challenged the validity of the stop, the challenge would have been unsuccessful because there was reasonable suspicion to support the stop, given the arresting officer's testimony and the content of the two videotapes of the stop. See

State v. Watson, 354 S.W.3d 324, 331 (Tenn. Crim. App. 2011). Upon review, we conclude that Tipton failed to establish the deficiency and prejudice prongs necessary to prove ineffective assistance of counsel. We further conclude, after reviewing the record in light of the Phelps factors relevant to the "any fair and just reason" standard, that the trial court did not abuse its discretion in denying Tipton's motion to withdraw his guilty plea.

In the previous section of this opinion, we held that the trial court erred in failing to apply the "any fair and just reason" standard and erred in failing to apply the factors in Phelps. See Timothy Damon Carter, 2012 WL 2308293, at *7 (concluding that "the trial court erred by 'failing to conduct the relevant analysis' in its decision to deny the Defendant's motion to withdraw his guilty plea" when the court failed to apply the Phelps factors) (quoting Phelps, 329 S.W.3d at 448). Given that the appellate record contains all of the information presented to the trial court at the time that the court made its determination regarding the motion to withdraw the guilty plea and that this evidence relates to most of the Phelps factors, we will conduct our own analysis of these factors in determining whether there was "any fair and just reason" for Tipton to withdraw his guilty plea. See Phelps, 329 S.W.3d. at 448-51 (conducting its own analysis of the factors related to the "any fair and just reason" standard after noting that the record contained evidence relevant to at least some of these factors, despite the fact that the trial court failed to conduct the proper analysis using these factors); Timothy Damon Carter, 2012 WL 2308293, at *7-*9 (conducting its own analysis of the Phelps factors after noting that the record contained evidence relevant to some of these factors and that the trial court erred in failing to conduct this analysis).

First, regarding the amount of time that elapsed between the plea and the motion to withdraw, the record shows that Tipton entered his guilty plea on September 8, 2010, and filed his motion to withdraw the plea on October 22, 2010, more than six weeks later. This is a substantial amount of time. Accordingly, this factor weighs against Tipton. Compare Phelps, 329 S.W.3d at 449 (concluding that a period of "almost seven weeks" between the entry of the plea and the filing of the motion to withdraw the guilty plea was "a significant length of time" and "weigh[ed] somewhat against Defendant."), with State v. Marcus E. Robinson, No. M2005-00670-CCA-R3-CD, 2006 WL 1097456, at *3, *5 n.5 (stating that a period of less than one month between the entry of the guilty plea and the pro se motion to withdraw guilty pleas was "of no consequence in this case as it was neither a particularly long nor short time.").

Second, regarding the presence, or absence, of a valid reason for the failure to move for withdrawal of the plea earlier in the proceedings, the record shows that this issue was not specifically presented at the hearing on the motion to withdraw the guilty plea. Consequently, this factor is neutral.

Third, regarding whether the defendant has asserted or maintained his innocence, the record demonstrates that Tipton never asserted his innocence of the charge in this case. The transcript from the hearing on his motion to withdraw shows that Tipton never claimed his innocence. In addition, the transcript from the plea submission hearing shows that Tipton acknowledged his guilt and agreed with the State's recitation of the facts regarding his offense. Consequently, this factor weighs against Tipton. See Timothy Damon Carter, 2012 WL 2308293, at *8 (concluding that this factor weighed against the defendant where the defendant had never maintained his innocence at any stage in the proceedings).

Fourth, regarding the circumstances underlying the entry of the guilty plea, the record shows that Tipton hired trial counsel just after his arrest and had the assistance of trial counsel during the entry of his guilty plea. The transcript of the guilty plea hearing shows that Tipton entered his guilty plea in a group guilty plea involving three other defendants. Although the Tennessee Supreme Court has cautioned trial courts against using group guilty pleas, it recognized that a group guilty plea may be in "substantial compliance" with constitutional and procedural requirements. Phelps, 329 S.W.3d at 451 n.16. A review of the transcript shows that Tipton never disclosed any confusion at the plea submission hearing. Compare id. at 450-51 (noting that the "Defendant repeatedly expressed confusion and frustration about the proceedings" in its analysis of this factor), with Timothy Damon Carter, 2012 WL 2308293, at *8 (noting that "[u]nlike the defendant in Phelps, the Defendant here never expressed any confusion or frustration about the guilty plea proceedings"). At the plea submission hearing, Tipton stated under oath that he understood that he was waiving his right against self-incrimination, his right to plead not guilty, his right to have a jury trial, his right to confront and cross-examine the State's witnesses, his right to call witnesses in his own behalf, his right to testify in his own behalf, and his right to appeal. He also stated that he was not under the influence of any alcohol or drugs at the time he entered his plea, that no one had forced, threatened, or pressured him into entering his guilty plea, that he had discussed entering his guilty plea with his attorney, and that he was entering his plea freely and voluntarily. During the plea colloquy, Tipton stated that he understood that his felony DUI conviction could be used to increase or enhance his punishment in future cases. He also stated that trial counsel had explained all of his options and had talked to him about the discussions with the prosecutors that led to this plea agreement. Finally, Tipton said he was satisfied with trial counsel's performance and did not have any questions for the trial court. Then Tipton entered his guilty plea to count three of the indictment and acknowledged that the State's recitation of the facts supporting his guilty plea was correct.

Regarding this factor, Tipton argues on appeal that he should be allowed to withdraw his guilty plea because trial counsel provided ineffective assistance regarding the suppression of his stop. The State argues that Tipton failed to establish the deficiency and prejudice prongs necessary to prove ineffective assistance of counsel. We agree with the State. In

order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697). A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

Here, the trial court accredited trial counsel's testimony that he discussed challenging the legality of the stop with Tipton and that it was Tipton's decision not to pursue challenging the legality of the stop. In light of the arresting officer's testimony during the offer of proof and the two videotapes of Tipton's stop, we conclude that it was reasonable for trial counsel not to pursue challenging the legality of Tipton's traffic stop. Officer Shelley testified that he stopped Tipton after Tipton crossed the line lanes approximately four times. See T.C.A. § 55-8-123(1) (stating that when there are two or more marked lanes for traffic, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety[.]"). The recording of the stop, which was obtained by trial counsel, shows Tipton driving on a four-lane street divided by a center turn lane. In this recording, Tipton crosses well-over the broken line on his left side and into the adjacent lane just prior to Officer Shelley initiating his emergency lights. The second recording, which was obtained by motion and appellate counsel, depicted Tipton's driving just prior to the footage on the first videotape. This recording shows Tipton on a six-lane street divided by a concrete barrier and intermittent center turn lane which reduces into a four-lane street divided by a center turn lane. In this recording, Tipton appears to cross the left fog line before turning on his turn signal and moving into the center of the three lanes of traffic. He then appears to cross the broken line on his right. An instant later, he appears to cross the broken line on his right again before the road reduces to four lanes with a center turn lane, and he appears to

cross the broken lane line on his left. The quality of both video recordings of Tipton's stop is extremely poor, with visibility of Tipton's car in relation to the lane lines nearly impossible because of the glare from the street lights. The recording showing Tipton's driving just prior to the officer's initiation of his emergency lights is the most visible in that it clearly shows Tipton crossing well-over the broken line on his left side and into the adjacent lane just prior to being stopped. Given this proof, we agree with the State that any challenge to the validity of the stop would have been unsuccessful because the arresting officer had reasonable suspicion to stop Tipton. See State v. Levitt, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001) (Reasonable suspicion for an investigatory stop will be found to exist only when the events which preceded the stop would cause an objectively reasonable police officer to suspect criminal activity on the part of the person stopped.); Watson, 354 S.W.3d at 331 (concluding that "Appellant crossed the yellow line once and the fog line twice, certainly more than weaving within his own lane of traffic"); see also State v. Joseph A. Patterson, No. M2010-02360-CCA-R3-CD, 2011 WL 3668845, at *3 (Tenn. Crim. App. Aug. 22, 2011) (concluding that the officer had reasonable suspicion to stop the defendant when the officer testified that she observed the defendant "swerving and crossing over the lines that indicate the lanes of travel"); State v. William Robert Wilson, No. M2009-01146-CCA-R3-CD, 2010 WL 2966747, at *8 (Tenn. Crim. App. July 26, 2010) (concluding that the officer had reasonable suspicion to stop the defendant when the videotape of the stop showed the defendant weaving slightly within his lane and the officer testified that he personally observed the defendant cross the center line two different times in addition to weaving within his lane of traffic); State v. Jody Glen Loy, No. E2006-02206-CCA-R3-CD, 2008 WL 2229259, at *5 (Tenn. Crim. App. May 30, 2008) (holding that the officer had reasonable suspicion to stop the defendant when the officer observed the defendant "weav[ing] within his own lane, driv[ing] erratically, and cross[ing] the center line of traffic on at least three occasions"). Consequently, Tipton failed to prove that trial counsel's performance was deficient.

We also agree with the State that Tipton failed to establish prejudice because he failed to show that but for trial counsel's alleged deficient performance, he would not have entered his guilty plea and would have insisted on going to trial. Because Tipton's challenge to the stop would have been unsuccessful, Tipton would have had to face a trial, where the State would have presented the arresting officer's testimony, the alcohol/drug influence report, the two videotapes of the stop, and the report showing that he had a blood alcohol content of .26 percent at the time of his arrest. Specifically, the alcohol/drug influence report shows that at the time of the stop Tipton had food all over his face and clothes, admitted consuming four or five beers, and stated that he was a "dumb[---]" and "had too much to drink." Upon review, we conclude that Tipton failed to establish the deficiency and prejudice prongs necessary to prove ineffective assistance of counsel. Consequently, this Phelps factor regarding the circumstances underlying the guilty plea weighs against Tipton.

-17-

Fifth, regarding Tipton's nature and background, the record shows Tipton was thirty-eight years old at the time he entered his guilty plea in this case. At the hearing on his motion to withdraw his guilty plea, Tipton testified that he was a high school graduate and had received some education in the United States Navy. Tipton stated that he was currently working as a real estate agent for Century 21. He also stated that he was a co-owner of a property management company and a project supervisor for a construction company. Tipton's education and extensive work experience indicate that he had the capacity to fully understand a proper plea colloquy. This factor weighs against Tipton.

Sixth, regarding the degree to which the defendant has had prior experience with the criminal justice system, the indictment shows that Tipton had four prior convictions for DUI. Tipton received one DUI conviction in 1998 in Knox County Criminal Court, two DUI convictions in 2000 in Knox County General Sessions Court, and one DUI conviction in 2003 in Knox County General Sessions Court. Consequently, Tipton had defended against DUI's in both general sessions and criminal court prior to this case. This factor weighs against Tipton.

Because the record does not support any factors indicating that there may be a "fair and just reason" for allowing Tipton to withdraw his guilty plea prior to sentencing, we need not consider the last factor regarding the potential prejudice to the State. See Phelps, 329 S.W.3d at 451 (stating that the potential prejudice to the government factor only becomes relevant when the record shows that some of the factors indicate that there may be a "fair and just reason" to allowing the withdrawal of the guilty plea prior to sentencing); Timothy Damon Carter, 2012 WL 2308293, at *9 (holding that "[b]ecause none of the factors we have examined weigh in favor of the Defendant, we will not examine the last factor regarding prejudice to the State."). Consequently, after reviewing the record in light of the non-exclusive multi-factor test in Phelps, we conclude that Tipton failed to establish a fair and just reason for withdrawing his guilty plea. Accordingly, we affirm the judgment of the trial court.

## CONCLUSION

The trial court erred when it failed to apply the "fair and just reason" standard and erred when it failed to apply the non-exclusive multi-factor test in Phelps. However, after reviewing the record in light of the Phelps factors, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE

-18-